Our next case is VernetX v. Vidal, Director of the Patent Office, 2017-25-93. Mr. Zalabar, was it? Yes, Your Honor. Please proceed. Daniel Zalabar, on behalf of VernetX, and may it please the Court. During prosecution, VernetX clearly and unequivocally- I'm sorry, I'm just curious. If we were to affirm the first appeal here, then what happens here? This appeal would be moot, Your Honor. The only claim at issue in this appeal is Claim 5, and Claim 5 is at issue in the first appeal that you heard today. Okay. That's certainly not the result we hoped for, and so I'll proceed nonetheless. During prosecution, VernetX clearly and unequivocally disclaimed from the scope of the claimed indication the act itself of establishing a secure communication link. In fact, the Patent Office acknowledges at page 32 of its response brief that at least when viewed in isolation, VernetX's prosecution statement supports VernetX's view of disclaimer. And there is no dispute that under VernetX's view of disclaimer, he or she does not teach an indication as claimed. It's with that backdrop- Is this your first time arguing prosecution disclaimer to support your claim construction, that indication and establishing are two different actions? As I recall in the prior litigations, when this dispute arose, you advanced specification disclaimer arguments, but never before until this proceeding did you make a prosecution disclaimer argument. Is that right? That's correct, Your Honor. In the prior appeals involving this patent that this Court heard, there was a specification disclaimer argument. But the Patent Office does not argue waiver, and they don't do so for good reason. At that time, the underlying proceeding in which the statement was made was in fact one of the proceedings that went up on appeal that Your Honor heard. And as this Court has made clear, in fact in a decision last year, in Cup Computing v. Trend Micro, a prosecution history disclaimer isn't effective in the proceeding itself in which it is made. But subsequently, once that proceeding is complete, it will be binding on the patent owner. So here we're in that situation where while prosecution history disclaimer may not have applied back when those prior appeals were heard, it is binding now on the patent owner and on the patent. Indication is a strange word, I found. I haven't seen it very much in patents, if at all. What do you mean by indication? What would you consider to be sufficient to constitute an indication other than the fact of the event that is supposedly to be indicated? I think, Your Honor, the best example in our specification of an indication that is separate and apart from the communication link itself is the Go Secure hyperlink that is discussed at Appendix 97 of our patent, where it really goes to the heart of what the 504 patent is, which is a secure system that can be layered on top of the ordinary internet, where a user will be on their browser, browsing normal websites, and then they have a Go Secure hyperlink where they can click on that link that's providing them an indication that the system provides security, and when they click on that link, the process is initiated. And this is unlike the system in Kiyuchi, where Kiyuchi is really a custom-built security system where the default is security. The user will log into Kiyuchi's software system, and the user already knows security is in play because that's the sort of system it is. Kiyuchi doesn't need this sort of separate indication that the 504 patent has. In that underlying re-exam proceeding where you made a statement during that proceeding, I saw that in the right of appeal notice, the examiner rejected that understanding of the claim. And I guess what I'm wondering is, if there was a – let me try a hypothetical. The claim is for a car, and then during a re-exam proceeding, the patent owner says, My car is limited to a green car. And then the examiner, in an office action, responds with, No, that's not a reasonable construction of your car. It's not limited to a green car. It could be any kind of colored car. Under circumstances like that, and if the patent somehow survives the re-exam proceeding, is it permissible for a patent owner to say, My car is a green car. I still want my green car, understanding of the car claim? I think it would depend on how the statement was phrased during prosecution. If the patent owner made a clear and unequivocal statement that their claimed invention does not cover a green car, then I think the claims would not include it. I guess if the prosecution, the re-examination went through the whole proceeding, where it was quite clear from the agency's perspective that it wasn't limiting the claimed car to a green car, and went forward on that clear understanding, would a reasonable person reading the prosecution history come away with the idea that the surviving claims are actually limited to a green car? Right, and I think that's where the question becomes, and as this Court has made clear, you need to look at the prosecution as a whole. And if after, for example, the examiner says, Right, so let's talk about my hypothetical. Yes, Your Honor, I intend to. If after the examiner says, I disagree, your claims are not directed to a green car, then the patent owner comes back and says, Okay, you're right, I'm going to find patentability in some other way with some other limitation, then that would be the sort of equivocation that this Court has identified as perhaps guiding against the disclaimer. The equivocation, the abandoning the disclaimer. Yes, Your Honor. So you're saying that it isn't enough that the examiner says, I don't accept this as a reasonable construction of the claim. I don't believe that's enough, Your Honor, and I believe this Court has even declared that simply an examiner not accepting a disclaimer, that fact alone is not enough to say that there wasn't a disclaimer. I think the other point that's relevant to the facts we have here is that there isn't any argument. What is the best case for that proposition? For that particular proposition, Your Honor, I have to admit I can't think of a case. I don't think there was one cited in the briefs because this issue didn't come up. But what I do want to say is that here there's no argument that there was any of that sort of equivocation in the prosecution history. Genetics has identified this statement in the prosecution that we say was a disclaimer. No equivocation by the party, but the problem is what the examiner concluded, right? Your Honor, the Patent Office and the Board have not pointed to any— Are you familiar with the right of appeal notice that issued in the prior reexamination where the examiner rejected this understanding of the claim? Yes, Your Honor. I agree the examiner rejected our understanding of the claim with this regard. But my point is that neither the Board in its final decision nor the Patent Office in its brief point to any of these sorts of equivocating statements as a reason to reject our disclaimer. The only statements that— So we're not allowed to look at the examiner's right of appeal notice when it comes to this legal question of whether there was prosecution disclaimer and then figuring out what is the proper construction of this claim? Your Honor, I would respectfully submit that if the court were inclined to identify additional portions of the prosecution that neither the Board nor the Patent Office did, the proceeding should be remanded so that genetics has an opportunity to address this. I thought we already agreed that you're familiar with the right of appeal notice and you acknowledge that the examiner rejected this particular construction that the Patent Office advanced. Yes, Your Honor. But again, I would also point out that in district court, genetics is district court adversary Apple itself said that this statement was a clear unequivocal statement that genetics had disclaimed acts that are not separate and apart from the secure communication link and the district court agreed. And so if this statement were not found to be a binding prosecution history disclaimer, we'd really be squarely in a world where— Did anybody evaluate the right of appeal notice in that Apple litigation? I don't know, Your Honor. I don't think so. I would also submit, Your Honors, that the Board erred when it relied on the broadest reasonable interpretation standard as a reason to reject the disclaimer. That's squarely against this court's case law. And in any event, the Powerful Patent, as Your Honor pointed out a few minutes ago, has expired. It expired two years ago. It expired when we filed a request for director review, where we pointed out that the patent expired and we identified our reasons why disclaimer applies. It expired when the director review decision issued, and it was already expired when the proceeding was fully briefed. And so I would point out that the Phillips standard does apply here and not the broadest reasonable interpretation. If there are no further questions, Your Honor, I'll reserve my time. We will now call you Mr. Vassillo for the PTO. Thank you, Your Honor. May it please the Court. I will start saying that we also agree that in the previous argument, if this Court affirms that the Board's decision finds Claim 5 of the 504 patent anticipated under Lindemann, then that this case would be moot. And we would also not have a problem that once Claim 5 has been affirmed to be unpatentable, then our administrative concerns regarding the vacater of the Board's decision under Musingware and Munsingware and Balfour Spar Sourcing would fall away, and we would have no problem with vacating the entire decision. Why vacate a decision when we can dismiss the appeal as moot? You can dismiss the appeal as moot as well. That's correct. So if for some reason the Court does not affirm that Claim 5 is anticipated by Lindemann in the previous appeal, we do believe that the Court should affirm the Board's finding here that Claim 5 of the 504 patent is anticipated by the Kiyuchi reference. The only claim term now at issue is the indication limitation of Claim 1. I think this Court should affirm the Board's finding that the CHTTP system of Kiyuchi teaches the claim to comprise an indication that the DNS system supports establishing a secure communications link. The Board has identified substantial evidence that Kiyuchi teaches the indication limitation, and its decision comports with this Court's other decisions regarding the Kiyuchi reference. In this case, at Appendix 5, the Board notes the petitioner's argument that Kiyuchi teaches indication limitation because the CHTTP server provides an IP address only after the CHTTP server determines that the request is legitimate and that the client-side proxy can communicate with the host specified in the URL. And then at Appendix 3-4, the Board made the finding, substantial evidence in the record, that Kiyuchi teaches that the CHTTP server sends the requested IP address if it determines the query is legitimate and the requested server-side proxy is registered and permitted to accept the connection. Moreover, the Board found that there's no temporal requirement for the indication in Appendix 7 so that it can be part of the messaging that establishes the secure communication link. Again, this finding is supported by other decisions in this kind of history of the Vernetics cases. This Court's finding in the 1368 Mangrove Appeal, namely that when a secure connection between the client-side and server-side proxies is not permitted, the CHTTP name server returns an error message, not an IP address. If the client-side proxy receives an error message, then it performs the DNS lookup on its own. The only time the CHTTP name server returns an IP address and other indicators like the public key or the nonce values is when it has already confirmed that the query is legitimate and the secure communication between the user and the origin is permitted. This type of binary messaging, this error status or IP address, demonstrates that the messages from the CHTTP server are not the same as those from a conventional DNS system that keeps the claimed indication limitation. In the same way, this aligns with the Court's decisions in the 1591 Apple Appeal and the 1751 Cisco Appeal affirming that lend-a-min similarly teaches an indication element by disclosing returning a network address and disclosing the use of access control lists that show the system only performs operations for authenticated and authorized users. Here in Cuyuchi, the registration acts in the same way as that ACL list. Could you address Mr. Sahlberger's disclaimer? Sure. I think the Board's ultimate conclusion regarding the purported prosecution disclaimer from the IPR system also comports with the decisions from both the courts that have looked at this issue. First, I think it aligns with this Court's decision in the 1751 Cisco Appeal where this Court rejected Renetics' argument that the Board failed to conduct a proper claim construction analysis in view of the District Court's claim construction decision applying a prosecution disclaimer based on the same arguments that Renetics makes here today. Second, it aligns with how the District Court actually limited the scope and applied the disclaimer. The District Court found that a disclaimer was a disclaimer of a very limited one, one of DNS servers that only return requested DNS records such as an IP address or key certificate. That's at APPX 1131. Here, the Court has already found that Cuyuchi's CHTTP server does more than just return the requested DNS records. It checks to see whether or not the server-side proxy is registered and is permitted to accept the connection from the client-side proxy, and it will return an error message to the client-side proxy if not. I think under either situation, this Court has decided that there is no clear and unequivocal prosecution disclaimer because a reasonable person looking at it would not understand that they disclaimed the full scope of what they're arguing today. So under either theory, under the theory that there was no prosecution disclaimer because a reasonable person looking at it wouldn't recognize it, or to the extent that some disclaimer is recognized, it's much more limited. The scope of that disclaimer is much more limited than what they're arguing for today. Of those two, which do you think is correct? I mean, I think that the prior one, that there is no... Well, let me take a step back. I think the easier one to defend under the record is that the limited scope does not apply here because what the limited scope... That the disclaimer was, but there was a disclaimer, but only to the limited scope. Correct. And what that limited scope of that disclaimer only applies to DNS servers that only return DNS records. Here, the CHP server does more than that. It first looks to the registry before it would return an IP address, and second, it returns an error message. That's very important. If it determines when it goes to the registry that the secure communication link could not be established. I think it's also defensible that one reasonable person looking at the record would not determine that there is a clear and unequivocal disclaimer of whether or not an indication can be part of the establishment, the messages that are used as the establishment of the secure communication link. The language of the disclaimer is pretty explicit. It seems to be taken by itself, and I think the board acknowledged as much. And the question is, is there... Put it this way. What is the strongest evidence that you have that that disclaimer, setting aside whether it's qualified in any way, that that disclaimer simply cannot be recognized as a disclaimer for purposes of this case? What's the best evidence you have of that? I mean, I think the best evidence is this court's decision in the 1755 Cisco Appeal, where the argument... 1755? 1751, I'm sorry, 1751 Cisco Appeal, where the court rejected Vernetis' argument that the board failed to conduct a proper claim construction in view of the district court's claim construction applying the prosecution disclaimer. Okay. Are you familiar with the right of appeal notice in the earlier re-exam? I do know that the examiner did not accept the argument, but I don't have it with me. My apologies, Your Honor. What is the legal consequence of that? Your opposing counsel has suggested that that is ineffective to undermine the effect of the disclaimer. Do you agree with that? I disagree with that. I think... And do you have any authority for the proposition that that's wrong? I do not have a case that states that. So we're left with no case on either side. Unfortunately. Sounds like we have a novel legal issue. It seems like it. Well, why don't you tell us why in your view that that is not correct? In other words, arguing the novel legal question for the first time. Because it's a reasonable person standard whether or not somebody reviewing the entire record would reasonably believe that there was an unequivocal and clear... But that really begs the question of what the question is. And is the question what a person would think was done by the party or whether the question is what a person would think was the net effect of the entire prosecution, including the examiner's view as to the scope of the claim that was accepted? I think it's the latter of those two, not just what the... So no matter how clear-cut and vehement the disclaimer, that if the examiner says, I don't accept it, then the disclaimer does not become embedded in the record. I think that would be part of... As a form of limiting the scope of the claim. I think that would be part of the analysis, depending on how clear that disclaimer would be. Let's assume the disclaimer could not be clearer. Okay. And under those facts, what would you say? I think if the disclaimer could not be clearer, then it would probably be a closer call. I still think you would have to go through the analysis, but then it doesn't end there. Even if you decide that there is a disclaimer, you still have to figure out the scope of the disclaimer as well. Yeah. All right. Okay. Would it matter if the applicant during prosecution argued for something very limiting? Like the claim when it says car, it really means green car. And then the claim somehow survives. And then in litigation, but the examiner rejected that construction of Carmen green car. But then in litigation, the claim survives, so you get a claim for car. And then in litigation, the patent owner says, your black car is infringing my claim car. And now we have a situation where it's quite clear that the agency never accepted the idea that the car is limited to a green car. But now we have a patent owner who has a patent and is trying to advance a position and understanding of the granted claim that is completely contrary to the declaration they made during the course of the prosecution. Are they somehow stopped from claiming that black cars, red cars, orange cars are infringing their claim car in light of what they said during the prosecution? So let me make sure I have the question correct. So during prosecution, the applicant says we're only claiming green cars. And then in a later litigation, the examiner says, no, your claim is not for a green car. It doesn't say that. It's just for a car. The claim gets allowed. And then that claim is then asserted against that black car. I think the court would have to look to see whether that limited admission or whether that argument, whether a reasonable person looking at that entire record would recognize that. And I think looking to the agency's decision not to apply that would be part of that calculus that they would have to look at. But again, in this case, I think that even if it's recognized that there was some type of disclaimer, that disclaimer doesn't help phonetics here because Kiyoshi teaches that it goes above and beyond anything that was disclaimed. It's not the establishment of the communication link itself, and the CHTTP server doesn't just return an IP address. It goes above and beyond that and does the additional work of deciding whether or not the client-side proxy is registered as part of the system and also would return an error message if the system determines that it's not registered. So it does more than just the conventional DNS system, which would just return the IP address. Regarding the Go Secure example in the specification, that is just one example of a type of indication in the patent owner documents and filings with respect to the IPR. They pointed to figures 26 and 27 as supporting the indication, not the Go Secure portion. So it's clearly the specification discloses more than just the Go Secure, and it would be incorrect to limit the claim construction and limit that to just one example in the specification. Regarding the... Counsel, as you can see, your red light is on. Do you have one final statement? I think my final statement would be that if this court affirms that Claim 5 is invalid in view of Lendeman and the previous appeal, this appeal could be dismissed as moot, and the underlying decision could be vacated. Thank you, Counsel. Mr. Zylberg has some rebuttal time. Thank you, Your Honor. Prosecution history estoppel should focus on the applicant's position during prosecution, and during prosecution, Brenetics' statement was as clear as they come. It said, the act of establishing the secure communication link is something separate from the act of indicating that the DNS system supports establishing a secure communication link at Appendix 1175. Even if this court is inclined to accept the Patent Office's view that the more defensible position is the more limited disclaimer quoted from the District Court's decision, as opposed to no disclaimer at all, even then, Piucci would not meet the indication. One of the acts that the District Court specifically identified was the return of an IP address. That is precisely what is pointed to in Piucci as satisfying the indication at page 34 of the Patent Office's response brief, where they say that the return of the network address, which is done as part of the creation of the secure link in Piucci, is what satisfies the indication. So even if that more limited disclaimer is applied, the Patent Office agrees is more appropriate than no disclaimer at all, Piucci does not satisfy the claims. If there are no further questions, I'll return the remainder of our time to the court. Thank you, counsel. Case is taken on the submission.